IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| REBECCA WONSANG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-1 (RDA/IDD) |
| | ) | |
| RELIANCE STANDARD INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on cross-motions for summary judgment filed by the parties.[1]  *See* Dkt. Nos. 8 ("Reliance's Motion"); 16 ("Wonsang's Motion").  The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).  This matter has been fully briefed and is now ripe for disposition. Considering Reliance's Motion, Reliance's Memorandum in Support (Dkt. 9), Wonsang's Brief in Opposition (Dkt. 20), Reliance's Reply (Dkt. 21), as well as Wonsang's Motion, Wonsang's Memorandum in Support (Dkt. 17), Reliance's Brief in Opposition (Dkt. 19), and Wonsang's Reply (Dkt. 22), it is hereby ORDERED that Reliance's Motion for Summary Judgment/Judgment on the Pleadings is DENIED and it is further ORDERED that Wonsang's Motion for Summary Judgment is GRANTED for the reasons that follow.

---

[1] For ease of reference, Plaintiff Rebecca Wonsang will be referred to as "Wonsang" and Reliance Standard Insurance Company will be referred to as "Reliance."

## I.  BACKGROUND

### A.   Undisputed Facts

Summary judgment is appropriate only where there are no genuine disputes of material fact.  Fed. R. Civ. P. Rule 56.  To this end, Reliance, in compliance with Rule 56 and Local Rule 56, set forth a statement of material facts in separate enumerated paragraphs that it, as the movant, contends are undisputed and supported by record citations.  Wonsang did not comply with this requirement to list the facts which she contends are undisputed in her own Motion.  *See* Dkt. 56 (providing a narrative of the facts under numbered headings).  The Rules next require a nonmovant to respond to a movant's statement of undisputed fact by "listing all material facts to which it is contended that there exists a genuine dispute" with citations to the record.  L.R. 56(B).  Reliance partially complied with this portion of the Rule by providing disputed facts in narrative form.  Wonsang, however, did not enumerate specific facts which it contends are disputed despite generally arguing that Reliance "gets the facts wrong."  *See* Dkt. 20 (no statements regarding any alleged disputed facts).  Wonsang's noncompliance with the Local Rules make it difficult for the Court to determine whether there are any disputes between the parties as to the facts.

Nevertheless, Wonsang's noncompliance with the Rules does not preclude review here nor does it weigh in favor or against either party.  Here, the claims at issue involve the denial of disability benefits arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*  Dkt. 1.  Courts recognize that, in an ERISA benefits denial case, "a motion for summary judgment is, in most respects, merely a conduit to bring the legal question before the district court, and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists do not apply."  *Schkloven v. Hartford Life & Accident Ins. Co.*, 2022 WL 2869266, at * 14 (D. Md. July 21, 2022) (internal citations and quotations omitted);

2

*Keith v. Fed. Express Corp. LTD Plan*, 2010 WL 1524373, at *4 n.4 (W.D. Va. Apr. 15, 2010) (same).   Accordingly, the following statement of facts is derived from a careful review of (i) Reliance's statement of undisputed facts, which are uncontested by Wonsang; (ii) Wonsang's "Statement of Facts" and Reliance's response thereto; and (iii) the Administrative Record as a whole.[2]  The undisputed facts are as follows:

1.      At the time of her disability claim, Wonsang was employed as a Physical Therapist Assistant at Legacy Healthcare Services ("Legacy").  Dkt. Nos. 17 at 6; 9 ¶¶ 1-3, 12.

2.      Reliance issued Policy No. VPL 300825 to Legacy to insure the short-term disability ("STD") and long-term disability ("LTD") component of Legacy's benefit plan ("the Plan").  AR1-34, 539-540.

3.      As an employee of Legacy, Plaintiff was a participant in the Policy.  AR1.

4.      Under the Policy, Reliance will "pay a Monthly Benefit if an Insured . . . (4) submits satisfactory proof of Total Disability to us." AR18.

5.      Reliance serves as a claims fiduciary with discretionary authority to determine eligibility for benefits and to construe the terms of the Plan with respect to benefits under the Plan.  AR14.

6.      "Total Disability" for purposes of Plaintiff's eligibility for disability benefits means that

as a result of an Injury or Sickness:

(1) during the Elimination Period and the for the first 24 months for which a Monthly benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation.

---

[2]   The Administrative Record was docketed in its entirety in four parts in Docket Entries 9-1 through 14-3.  Following the parties' naming convention, references to the Administrative Record will be cited as "AR" followed by the specific page number of the record citation.

(2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform
the material duties of Any Occupation. We consider the Insured Totally Disabled
if due to an Injury or Sickness he or she is capable of only performing the material
duties on a part-time basis or part of the material duties on a full-time basis

AR10.

7.      The Policy defines "Regular Occupation" as:

the occupation the Insured is routinely performing when Total Disability begins.
We will look at the Insured's occupation as it is normally performed in the national
economy, and not the unique duties performed for a specific employer or in a
specific locale.

AR9.

8.      The Policy defines "Any Occupation" as an occupation that is normally performed

in the national economy for which an Insured is reasonably suited based upon his/her education,

training, or experience.  AR9.

9.      Under the Policy, "[t]he Monthly benefit will stop the earliest of . . . (4) the date

the Insured fails to furnish the required proof of 'Total Disability.'"  AR19.

10.     The Policy also contains a limitation stating that "Monthly Benefits for Total

Disability caused by or contributed to by mental or nervous disorders will not be payable beyond

an aggregate lifetime maximum duration of twenty-four (24) months."  AR22

11.     According to the Policy, after a Monthly Benefit has been paid for 24 months, the

definition of "Total Disability" changes and benefits continue only if "an Insured cannot perform

the material duties of Any Occupation."  AR9,10.

12.     Wonsang stopped working on May 13, 2016 due to symptoms of arthralgia, back

pain, neck pain from cervical herniated discs, fibromyalgia, chronic fatigue, Epstein Barre virus,

IBS, and migraines.  AR295-296.

13.     In May 2016, Wonsang submitted her STD claim form, which was signed by her

4

primary care physician, Dr. Lee Hinnant.  AR543-544.

14.    In July 2016, Dr. Hinnant provided additional details regarding Wonsang's claim setting forth that Wonsang "has been suffering from neck pain, extreme fatigue, [Right Upper Quadrant] pain, and weakness for months." AR581.  Dr. Hinnant also asserted that Wonsang "was unable to work as she can't stand for long periods or do heavy lifting." *Id*.

15.    Additionally, Dr. Hinnant explained that "[t]he etiology of the symptoms is not fully clear.  She is seeing infectious disease for a Lyme evaluation.  She is also seeing pain management, neurology, and a DO[3] for mobilization of her neck and work on functional mobility." *Id*.  Further, it was not clear to Dr. Hinnant when Plaintiff would be able to return to work.  *Id*.

16.    Reliance's vocational staff determined that Plaintiff's Regular Occupation involved medium strength exertion.  AR715-717

17.    Reliance thereafter approved Wonsang's STD claim.  AR297

18.    In September 2016 and again in September 2017, Reliance's in-house nurse reviewed Wonsang's medical records and found that, "[b]ased on the medical records, claimant is precluded from engaging in any sustained activity of a frequent and consistent basis from the date of loss ongoing due to the myriad of complaints. She continues to await initial evaluation from providers recommended by Infectious Disease." AR191-92; AR193.

19.    Reliance approved Wonsang's LTD benefits on September 29, 2016 and advised Wonsang that she "can expect future benefits on or about the 26th of each month provided that [she] remain[s] Totally Disabled as defined by the group policy." AR445.

20.    In July 2017, Wonsang's neurologist, Dr. Cintron, opined that "[a]s a result of her symptoms of fatigue and poor mental stamina she is certainly not employable at this point and [I]

---

[3] Neither party defines "DO," but the Court interprets it to refer to a Doctor of Osteopathy.

don't foresee any significant change in this unless we are able to find a more effective approach."
AR1551.

21.     Reliance's clinical staff continued to perform periodic reviews of Wonsang's updated medical records.  AR19.

22.     In September 2017, on review of Wonsang's claim, one of Reliance's in-house nurses opined that Wonsang was "Totally Disabled" because she "remains precluded from engaging in any sustained activity on a frequent and consistent basis ongoing due to dizziness, blurred vision, mental fogginess, poor mental stamina, fatigue, headaches, and neck pain following motor vehicular accident."  AR195-96.

23.     Reliance paid Wonsang's LTD claim for the duration of the Regular Occupation Period of the policy.[4]  AR193-203

24.     In January 2018, Reliance informed Wonsang that after 24 months of benefits, she had to transition to the "Any Occupation" Period of the policy.  AR467-69.

25.      In February 2018, Wonsang submitted an Activities of Daily Living ("ADL") form where she explained that her conditions had worsened and that basic activities like showering were "difficult and painful."  AR1901-02

26.     On May 7, 2018, Reliance approved Wonsang's benefits under the Any Occupation period.  AR447.

27.     On October 5, 2018, Wonsang told Reliance that "she would like to be able to work from home in a limited capacity."  AR326.

28.     In September 2020, Reliance reviewed updated medical records and concluded that "there is insufficient evidence validating the presence of a condition that would continually impair

_____

[4] The Regular Occupation period lasted for 24 months.  AR9-10

this claimant's ability to work." AR198.

29.     In March 2021, Reliance performed a subsequent clinical review and noted that the there were no updated medical records since the September 2020 evaluation and that the nurse's opinion remained the same.  AR198.  The nurse also indicated that "multi-specialty work ups have been negative for an ongoing disabling condition." *Id.*

30.     In May 2021, Wonsang provided Reliance with the following update:

[I]n the last year been getting worse; has to have someone drive her everywhere she goes - when before she used to do short distances; pain and headaches are getting worse; asked about a typical day - she struggles to sleep util [sic] 3-4am so sleeps late, it takes all energy to feed dogs and make food, doctors appts take all her energy and cannot do anything else that day, if home she tries to do one small chore each day, there is not much she can do at this point; she lives with husband but he leaves at 5am and comes home at 7pm for work; sometimes her parents come over to help her; she has two dogs; [she] seemed to have relatively slow speech and trouble with word finding.

AR336.

31.     On June 23, 2021, Reliance considered additional medical records and concluded that, "given the claimant treated for recent COVID 19 infection requiring supplemental oxygen[,] it appears reasonable to support lack of consistent work function;" however, "[i]n absence of COVID 19, it is unclear what precluded work function from a physical standpoint." AR199.

32.     Reliance reviewed Wonsang's claim again in April 2022 and concluded that

"[a]s stated in previous reviews, there is insufficient evidence validating the presence of a condition that would continually impair this claimant's ability to work.  Although multiple conditions have been suggested as explanation for the claimant's complaints of chronic pain[,] work ups thus far have been inconclusive,"  and that "[c]riteria for diagnosis of Lyme disease, fibromyalgia, EDS or other has not been established. Testing for neuropathy was inconclusive. Exam findings have repeatedly been negative.

AR208; 360.

33.     In April 2022, on behalf of Reliance, Dr. Karen Meissler, Psy.D., reviewed Wonsang's neuropsychological evaluation and wrote that testing confirmed Wonsang had ADHD

and that Wonsang performed within an average range on measures of simple attention span and working memory.  AR201.

34.     Dr. Meissler also opined that Wonsang "would not be precluded from working but would likely perform best working on repetitive tasks." *Id.*

35.     In April 2022, Reliance's vocation expert, Frank Lepore, opined that, based on Dr. Meissler's explanation of Wonsang's capabilities, "no occupations commensurate with her skills and abilities would be identified as viable alternatives to which she would be independently employable." AR208

36.     On May 19, 2022 Dr. Meissler submitted an addendum writing:

On activities check the claimant was found to have authored and independently published a book on 12-10-20, currently selling on Amazon. Further information noted on social media indicates the claimant has identified herself as a selfemployed Freelance Writer from January 2017 to present. In addition to authoring her book she is reported to have maintained a blog for years (www.hopethroughtruth.com) as well as doing content editing for others. Most recently the claimant has published for writing contests ("Little Miss Perfect" on 4-16-22 and "Of Cats and Men" on 4-23-22) and maintains an active reading list, last updated on 4-27-22 indicating reading multiple books at a time as well as leaving extensive written reviews.

This level of cognitive functioning is inconsistent with uncontrolled ADHD or any moderate to severe cognitive deficits to impact functioning. Writing (as well as reading and analyzing) is a very complex and effortful cognitive task that requires sustained attention, concentration, organization, planning, integration of motor skills, etc.

As such the claimant does not appear to have any cognitive deficits sufficient to preclude working in any occupation.

AR202.

37.     Reliance denied Wonsang's claim for LTD benefits on June 2, 2022 and terminated her benefits as of May 26, 2022.  AR522-26

38.     In the letter denying benefits, Reliance advised that it was terminating benefits based on its review of record evidence showing that Plaintiff was no longer "totally disabled."

AR524.  Reliance highlighted notes from Wonsang's most recent physical examination with Dr. Balint that showed that she was still under his care for chronic neck pain, but that all test results were negative and that she had been encouraged to lose weight.  *Id.*  Reliance also noted that the physical examination of Wonsang by Mr. Kiemel, a cardiology physician's assistant, was normal. *Id.*

39.     Reliance further concluded after an "activities check" showed that Wonsang authored a book in 2020, has published essays, maintains a blog, and has an active reading list that:

> This level of cognitive functioning is inconsistent with uncontrolled ADHD, or any moderate to severe cognitive deficits to impact functioning. Your ability to write as well as read and analyze is a very complex and effortful cognitive task that requires sustained attention, concentration, organization, planning, and integration of motor skills.
>
> Therefore, based on these findings, you do not appear to have any cognitive deficits sufficient to preclude working in any occupation. Additionally, there is no medical evidence to support ongoing impairment due to COVID or any physical impairment or diagnosis. The medical information submitted for our review is insufficient and does not validate the presence of a condition that would continually impair your ability to work. You retain the ability to perform the material duties of your occupation.

AR524.

40.     Reliance notified Wonsang of her right to appeal the denial.  AR225.

41.     On June 24, 2022, Wonsang requested a copy of her claim file.  Wonsang did not receive a copy of her file within 30 days as required by ERISA, AR3787-91, and Wonsang's counsel had to follow up multiple times to receive a copy of the file.  AR369

42.     Wonsang appealed through her counsel and submitted updated medical documentation on November 1, 2022.  AR3833-3860, 3895-3987

43.     Wonsang emailed Reliance a copy of the appeal with attachments on December 2, 2022.  AR3989.

44.     In a letter dated December 19, 2022, Wonsang informed Reliance that she had not received an appeal decision or correspondence requesting an extension.  *Id.*  Wonsang also stated that the 45-day deadline under ERISA had expired, but that Wonsang would allow Reliance an additional 10 days to respond.  AR3989.  Wonsang cautioned that, if she did not receive a response by December 27, 2022, she would deem her administrative remedies exhausted.  *Id.*

45.     On January 3, 2023, Wonsang filed this lawsuit.  Dkt. 1.

46.     On January 23, 2023, Reliance advised Wonsang that Reliance "conducted an initial review of your request for appeal and the additional medical evidence enclosed" and "we have determined that an Independent Medical Examination ("IME") is necessary."  AR530.

47.     On March 29, 2023, Reliance issued its final denial decision of Wonsang's appeal.  Dkt. 9 ¶ 50.

B.  Procedural Background

On January 3, 2023, Wonsang filed her Complaint in this Court.  Dkt. 1.  On February 13, 2023, Reliance filed its Answer.  Dkt. 2.  On February 21, 2023, a Scheduling Order issued.  Dkt. 3.  On March 6, 2023, the parties filed a Joint Proposed Schedule and Discovery Plan indicating that the case should be resolved on cross motions for summary judgment.  Dkt. 4.  On June 2, 2023, an order issued setting deadlines for the filing of the administrative record and for dispositive motions.  Dkt. 2.  On June 23, 2023, the parties filed cross-motions for summary judgment and attendant briefs.  Dkt. Nos. 8-9; 16-17.  On July 14, 2023, both parties filed their oppositions to the other party's motion.  Dkt. Nos. 19-20.  On July 20, 2023, both parties filed replies in support of their own motions.  Dkt. Nos. 21-22.

## II.   LEGAL STANDARDS

Summary judgment is appropriate where a court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 330 (1986).   As district courts within the Fourth Circuit recognize, "ERISA actions are usually adjudicated on summary judgment rather than at trial." *Prowell v. UPS Flexible Benefits Plan*, No. CIV. L-10-3457, 2011 WL 51109291, at *3 (D. Md. Oct. 26, 2011) (citing *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260 (4th Cir. 2009)).

The Supreme Court has held that courts are "to review a denial of plan benefits under a *de novo* standard unless the plan provides to the contrary." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).   When "conducting *de novo* review of ERISA benefits determinations [the Court] should limit its review to the evidentiary record that was presented to the plan administrator or fiduciary." *Rupprecht v. Reliance Standard Life Ins. Co.*, 623 F. Supp. 3d 683, 693 (E.D. Va. 2022)).   Further, the "court reviewing an ERISA claim under *de novo* review is concerned only with the 'correctness, not the reasonableness,' of the denial." *Id.* at 693 (internal citation omitted).

Where an ERISA plan grants the administrator or fiduciary "discretionary authority," however, then the reviewing "court evaluates the administrator's decision for abuse of discretion." *Helton v. AT & T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).   Under the abuse of discretion standard, a court will uphold a discretionary determination provided that it is reasonable. *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008).   "[A] decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence," *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997), even if the court would have reached a different conclusion on its own, *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 417 (4th Cir. 2004).   Substantial

11

evidence is "that which a reasoning mind would accept as sufficient to support a particular conclusion" and which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Keith v. Fed. Exp. Corp. Long Term Disability Plan*, No. 7:09cv00389, 2010 WL 1524373, at *4 (W.D. Va. Apr. 15, 2010) (internal citations and quotations omitted). Ultimately, under either standard, the initial grant of disability benefits does not lift the burden of establishing a continuing disability from the claimant. *See, e.g.*, *Hensley v. IBM, Corp.*, 123 F. App'x 534, 538 (4th Cir. 2004) ("[T]he decision to grant benefits initially cannot create an obligation by which a fiduciary is estopped from later terminating benefits.").

III.   ANALYSIS

Wonsang moves the Court to grant summary judgment in her favor and against Reliance, awarding her past due benefits and restoring her to on-claim status. Dkt. 17 at 29. Reliance opposes Wonsang's motion and seeks summary judgment in its favor or in the alternative remand to Reliance for full and fair review. *See generally* Dkt. 9 (Reliance's Memorandum of Law in support of its Motion). Resolution of these cross motions for summary judgment raises three main issues for review: (1) whether Wonsang's lawsuit was timely; (2) whether the Court should analyze the case under *de novo* or abuse of discretion review given that Reliance issued its appeal decision after the commencement of the lawsuit; and (3) what relief should be awarded to Wonsang if she prevails. The Court will address each in turn.

A. Timeliness

Before this Court determines the appropriate standard of review, it will first address the timeliness of Wonsang's appeal. Reliance repeatedly argues in its briefing that Wonsang filed her lawsuit prematurely because Reliance was unable to conduct its requested IME. This Court disagrees. "Under 29 C.F.R. § 2560.503-1(i)(3)(i), a claim administrator has 45 days after a

12

claimant files an appeal and this can only be extended for an additional 45 days in 'special circumstances.'" *Rupprecht*, 623 F. Supp. 3d at 691. "If a claim administrator does not comply with the relevant deadlines, the claimant is deemed to have exhausted her administrative remedies and can file suit in federal court." *Id.* (citing *Krysztofiak v. Bos. Mut. Life Ins. Co.*, 628 F. Supp. 3d 602, 608 (D. Md. 2022), *reconsideration denied*, No. CV DKC 19-879, 2023 WL 2537537 (D. Md. Mar. 16, 2023)).

Reliance does not claim to have provided the required notice for an extension of the timeline and an insurer may not use an IME as a means to grant itself a unilateral extension of the appeal period.[5] *Rupprecht*, 623 F. Supp. 3d at 692. Reliance had "ample time to conduct such a review before the appeal" and failed to provide an appeal decision within the applicable time period. *Id.* Also, interestingly, while there is a dispute as to when Reliance received Wonsang's appeal, even after receiving a letter from Wonsang's counsel indicating that the deadline had passed, Reliance did not attempt to invoke an extension or otherwise rectify the discrepancy. [6]

---

[5] As a general matter courts have also found it "questionable whether the administrator has a right to request an independent medical examination during the consideration of an appeal from a denial of benefits." *Harper v. Reliance Standard Life Ins. Co.*, No. 07c3508, 2008 WL 2003175, at *9 (N.D. Ill. May 8, 2008) (citing *Williams v. Group Long Term Disability Ins.*, 2006 WL 2252550 at *8 (N.D. Ill Aug. 2, 2006) (stating such requests are viewed by courts "in a negative light," and holding that the insurer acted unreasonably in requesting an examination during appeal when the need for one was apparent earlier); *see also Cherry v. Digital Equip. Corp.*, No. Civs05-2165 WBS JFM, 2006 WL 2594465, at *7-8 (E.D. Cal. Sept. 11, 2006) ("defendants had already denied plaintiff's benefits before deciding there was a need for an IME. Thus, if an IME was genuinely necessary, this calls into question whether there was sufficient support for [defendant's] initial decision to deny benefits."); *Servat v. Am. Heritage Life Ins. Co.*, No. Civ.A. 04-2928, 2007 WL 2480342, at *18 (E.D. La. Aug.28, 2007), *aff'd*, 295 F. App'x 726 (5th Cir. 2008) ("In short, if Defendant truly needed another physician to have the opportunity to physically examine Plaintiff, rather than just review his records and talk to his treating physician, it seems that this already would and should have been conducted.")

[6] Wonsang argues that Reliance received the appeal on November 9, 2022, when it was allegedly picked up from the post office, while Reliance argues that it received the file on December 19, 2022. Dkt. Nos. 22 at 2; 19 at 6.

Finally, Reliance issued its appeal decision long after the 45-day deadline for its decision, regardless of what date it received Wonsang's appeal.  Wonsang is therefore "deemed to have exhausted her administrative remedies and can file suit in federal court" and her suit is not premature. *Id.* at 690.

### B. Standard of Review

The Court will next address the standard of review.  The parties disagree concerning the appropriate standard of review for Wonsang's benefits application, although both parties contend that they are entitled to summary judgment regardless of which standard applies.  Both parties agree that the Plan vests Reliance with discretionary authority, which ordinarily requires a court to exercise the abuse of discretion standard.  Nonetheless, Wonsang avers that a *de novo* standard should still apply since Reliance did not provide a decision within the applicable period under ERISA regulations.  Dkt. 17 at 3-5.  In support of her argument, Wonsang relies on 29 C.F.R. § 2560.503-1(l),[7] which requires "strict" compliance with ERISA adjudication deadlines.  Dkt. 20

---

[7] 29 C.F.R. § 2560.503-1(l) provides the following:

> (l) Failure to establish and follow reasonable claims procedures.
> > (1) In general . . . .
> > (2) Plans providing disability benefits.
> > (i) In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan, except as provided in paragraph (l)(2)(ii) of this section. Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. If a claimant chooses to pursue remedies under section 502(a) of the Act under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary.

29 C.F.R. § 2561.503-1(l)(2).  Subsection ii provides an exception for de minimis violations that do not cause prejudice or harm to the claimant, but only if the administrator satisfies certain

at 3.  Wonsang also relies on *Rupprecht*, for the proposition that where insurers do not strictly comply with ERISA-mandated deadlines, *de novo* review is appropriate.  Dkt. 20 at 3; 623 F. Supp. 3d at 687.  Reliance maintains that "judgment under deferential review is warranted."[8]  Dkt. 9 at 10.  While Reliance does not concede that *de novo* review applies, it does acknowledge that its denial decision was issued on March 29, 2023, which is objectively outside of the applicable time period.  *Id.* at 9.

Whether Reliance's failure to render an appeal decision in a timely manner transforms the standard of review from an abuse of discretion to a *de novo* standard appears to be an unsettled question within the Fourth Circuit.  While neither party has cited a Fourth Circuit case that directly addresses this issue, the Fourth Circuit has commented that "[n]ot all procedural defects will invalidate a plan administrator's decisions if there is 'substantial compliance' with the regulation." *Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997).  The other U.S. Courts of Appeals that have considered whether untimely appeal decisions transform the standard of review "have generally concluded in various fashions that *de novo* review applies if an appeal decision never issued as opposed to one issued belatedly."  *Rupprecht*, 623 F. Supp. 3d at 691 (citing *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, No. CV ELH-17-2729, 612 F.Supp.3d 516, 548–549 (D. Md. Mar. 27, 2020) (collecting cases)); *see also Brewer v. UNUM Group*, 622 F. Supp. 3d 1113, 1128-32 (N.D. Ala. 2022) (holding that a tardy decision from a plan administrator is reviewed *de novo*); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 295-96 (3d Cir. 2002) (applying *de novo* review where

---

requirements.  Reliance does not contend that it can satisfy any of these requirements.  Thus, this case is governed by subsection (i).

[8] Reliance also argues that the standard of review should be for abuse of discretion because Wonsang filed this prematurely.  Dkt. 19 at 6.  However, this Court has already determined Wonsang's Complaint was timely, so it need not address that argument again here.

the claim administrator failed to issue a decision because there is "no analysis or reasoning to which the [c]ourt may defer"); *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1103 (9th Cir. 2003) ("[A] claim is "deemed . . . denied" on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is usually to be reviewed *de novo*."); *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 826 (10th Cir. 2008) (applying *de novo* review when a claim administrator failed to issue any decision during the applicable appeal period). Moreover, the Seventh Circuit in *Fessenden v. Reliance Std. Life Ins. Co.* specifically held that *de novo* review is appropriate where a decision is not rendered during the appeals period, even if it is eventually issued because "when that time is up, it's up[,]" and "[s]ubstantial compliance with a deadline requiring strict compliance is a contradiction in terms." 927 F.3d 998, 1004 (7th Cir. 2019).

Consistent with the above-cited cases, the Court concludes that *de novo* review is the proper standard of review. *See Rupprecht*, 623 F. Supp. 3d at 692 (applying *de novo* review where Reliance failed to issue a denial decision within the appropriate time frame). Reliance's failure to issue a benefits decision within the 45-day period does not constitute a minor irregularity or "substantial compliance with the required procedures." *Id.* (internal citation omitted). Rather, Reliance failed to comply with the required procedures such that *de novo* review is appropriate.

## C. Review of the Appeal

Reliance asserts that Wonsang's LTD benefit appeal should be denied because Wonsang is no longer "totally disabled" under the Plan. Wonsang argues that Reliance relied solely on outlier opinions to make its denial determination and impermissibly ignored Wonsang's evidence of her disability. Dkt. 17 at 1-3. Reliance argues in response that, even if the court finds Reliance unreasonable or incorrect in its decision that Wonsang was not "totally disabled" under the Policy,

the Court should apply the Plan's Self-Reported Conditions Limitation to deny Wonsang's benefits.  The Court addresses each argument in turn.

### i. Evidence Outside of the Administrative Record

Having determined that *de novo* review applies, the Court must decide what evidence the Court should review. In support of its Motion, Reliance attached "supplemental documentation" which included an additional letter from Reliance upholding Wonsang's denial, "a report from Dr. Howard Grattan and the vocational assessment that were referenced within the letter and forwarded to counsel."  Dkt. 9 at 9.  Reliance argues that the Court should review the supplemental documentation attached to its Motion for Summary Judgment/Judgment on the Record because this case concerns a claim that requires consideration of "complex medical questions or issues regarding the credibility of medical experts."  *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993) (enumerating special circumstances that may warrant consideration of additional evidence); Dkt. 21 at 2.  Wonsang contends that no exceptional circumstance justifies augmenting the administrative record to include Reliance's extrinsic materials, as Reliance had ample time to facilitate these reports during the appeal period.  Dkt. 20 at 15.

This Court agrees with Wonsang.  "As a general rule, the court should consider only the administrative record that was before the administrator."  *Moore v. Unum Provident Corp.*, 116 F. App'x 416, 420 (4th Cir. 2004).  "[I]n ERISA actions in which courts review the administrator's decision *de novo*, introduction of evidence outside the administrative record is permitted only in exceptional circumstances."  *Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 297 (4th Cir. 2006).  In *Quesinberry*, the Fourth Circuit provided a non-exhaustive list of examples that constitute "exceptional circumstances," including "claims that require consideration of complex medical questions or issues regarding the credibility of medical experts."  987 F.2d at 1027.

However, the Fourth Circuit has made clear that there is a difference between evidence that could have been presented during the administrative process, and evidence that could not have been developed in time. *Id.* Put differently, "if the evidence . . . is simply better evidence than the [party] mustered for the claim review, then its admission is not necessary." *Id.* Here, Reliance could have submitted Wonsang's file to Dr. Grattan or another expert for an opinion before the administrative period was closed. For whatever reason, Reliance chose not to. It appears that Reliance's supplemental evidence is "simply better evidence than could have been, but was not, developed and included in the administrative record" and thus should not be considered. *Moore*, 116 F. App'x at 420. Thus, this Court is not persuaded that it is proper to review Reliance's additional evidence, where Reliance cannot demonstrate a compelling reason for why it failed to provide any of this evidence during the administrative appeal period.[9] Accordingly, in reviewing this appeal, the Court will only consider what is available in the administrative record.

### ii. Total Disability Under the Plan

The Court will next conduct a *de novo* review with respect to Wonsang's entitlement to LTB under the "any occupation" definition of "totally disabled." Under the Plan, "totally disabled" has different definitions depending on the timing of an insured's claim. AR10. For the first 24 months, "totally disabled" means that an insured is unable to "perform the material duties of his/her Regular Occupation." *Id.* After 24 months, "totally disabled" means that the insured is unable to "perform the material duties of *Any* Occupation." *Id.* (emphasis added). Any Occupation is defined as "an occupation normally performed in the national economy for which an Insured is

---

[9] Reliance also argues that Wonsang thwarted its ability to provide this evidence in a timely fashion, because she filed her case before Reliance could conduct an IME. However, as the Court has already found that an insurer may not unilaterally extend the appeals period by requesting an IME, the Court is similarly unconvinced that Wonsang thwarted Reliance as Reliance contends.

reasonably suited based upon his/her education, training or experience." AR9.  During the initial 24-month period, the Plan considers an insured "totally disabled" if "due to an Injury or Sickness he or she is only capable of only performing the material duties of her regular occupation on a part-time basis or part of the material duties on a full-time basis." *Id.*  After the 24-month period, the Plan considers an insured person "totally disabled" if "due to an injury or sickness [an insured] is capable of only performing the material duties of any occupation on a part-time basis or part of the material duties on a full-time basis." *Id.*

Reliance concluded that Wonsang was not totally disabled under the "Any Occupation" period.  That assessment was based predominantly on an in-house nurse's review of Wonsang's medical records and a psychiatrist's review of Wonsang's neuropsychological evaluation.  In support of its denial decision, Reliance's in-house nurse concluded that there was "insufficient evidence validating the presence of a condition that would continually impair this claimant's ability to work." AR200.  The reviewing staff considered the fact that "multiple conditions have been suggested as explanation for the claimant's complaints of chronic pain work ups thus far have been inconclusive" and the "[c]riteria for diagnosis of Lyme disease, fibromyalgia, EDS or other has not been established. Testing for neuropathy was inconclusive[.] Exam findings have repeatedly been negative." *Id.*  Additionally, Dr. Meissler, a psychiatrist hired by Reliance, reviewed Wonsang's neuropsychological evaluation and concluded that though the report revealed that Wonsang had ADHD, she "would not be precluded from working, but would likely perform best working on repetitive tasks" based on her performance on various attention span and memory tests. AR201.  Reliance also conducted an Activities Check which Dr. Meissler reviewed.  Based on that Activities Check, Dr. Meissler opined the following:

> On activities check the claimant was found to have authored and independently published a book on 12-10-20, currently selling on Amazon. Further information noted on social

media indicates the claimant has identified herself as a self[-]employed Freelance Writer from January 2017 to present. In addition to authoring her book she is reported to have maintained a blog for years (www.hopethroughtruth.com) as well as doing content editing for others. Most recently the claimant has published for writing contests ("Little Miss Perfect" on 4- 16-22 and "Of Cats and Men" on 4-23-22) and maintains an active reading list, last updated on 4-27-22 indicating reading multiple books at a time as well as leaving extensive written reviews.

This level of cognitive functioning is inconsistent with uncontrolled ADHD or any moderate to severe cognitive deficits to impact functioning. Writing (as well as reading and analyzing) is a very complex and effortful cognitive task that requires sustained attention, concentration, organization, planning, integration of motor skills, etc.

As such the claimant does not appear to have any cognitive deficits sufficient to preclude working in any occupation.

AR202.

In reviewing the lengthy record, it appears to the Court that Reliance took a minimalist approach in terms of its process for denying Wonsang's benefits. Unlike many other cases, Reliance did not request an independent medical assessment to affirm if Wonsang's complaints or symptoms were accurate, until after the time to decide her appeal had passed or nearly passed depending on the date the appeal was received. Instead, Reliance relied almost exclusively on clinical staff members' review of Wonsang's file rather than medical evidence by treating or examining providers. "To be sure, plan administrators need not accord treating physicians controlling deference in the face of contrary evidence." *Smith v. Reliance Standard Life Ins.* Co., 778 F. App'x 207, 211 (4th Cir. 2019). However, an insurer "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* (internal quotation marks omitted).

Every examining physician or treating physician in the Administrative Record, both before and during the "Any Occupation" Period, who addressed Wonsang's ability to work, opined that Wonsang was not capable of *any* work and was therefore "totally disabled." *See* AR1551 (opinion

from neurologist Dr. Cintron in 2017 that Wonsang is "certainly not employable at this point and [I] don't foresee any significant change in this unless we are able to find a more effective approach."); AR3916-17 (opinion of Dr. Nelson from June 2022 noting Wonsang is "completely and totally disabled from work due to medical condition and required medication."); AR3895-96 (opinion from neurology provider, Dr. Nix, in August 2022 that Wonsang "is significantly debilitated due to her many symptoms, she is bedbound for much of her day. Wearing a collar while upright allows some improved function but not resolution. She is unable to lead an active life in terms of physical activity."). Further, following Dr. Meissler's April 2022 opinion that Wonsang would be limited to "working on repetitive tasks," Reliance conducted a vocational review. AR208. Reliance's vocational expert concluded that there were no "occupations commensurate with her skills and abilities" that Wonsang would be able to perform.[10] *Id.*

Instead of delving deeper into the medical evidence of Wonsang's condition, Reliance heavily relies on Wonsang's reading and writing activities to argue that Wonsang is not totally disabled under the Any Occupation definition. Dkt. 9 at 16; AR524. Reliance conducted an Activities Check in 2022 that revealed that Wonsang listed herself as a Creative Blogger and

---

[10] The vocational expert explained in detail that:

[T]he above capacities provided by Dr. Meissler would provide significant vocational barriers for the claimant. Ms. Wonsang has held a professional license as a Physical Therapy Assistant (PTA) and worked in the medical field for 15+ years. The need to work with repetitive tasks only, would affect her ability to multi-task, work directly with patients, and would appear to require an additional level of supervision.

Though she does potentially possess transferrable skills; in light of her above outlined capacities, her educational background, and her vocational experiences; it is this VRS's opinion that no occupations commensurate with her skills and abilities would be identified as viable alternatives to which she would be independently employable.

AR208.

Skilled Proofreader on LinkedIn from 2017 to present, had an active reading list on "Goodreads.com," self-published a book in 2020, had a blog, and had published two essays. AR202 (Dr. Meissler's report detailing what was found during the Activities Check).   After learning of these activities, Dr. Meissler opined that the level of research and writing activities that Wonsang engaged in were "not consistent with uncontrolled ADHD or any moderate to severe cognitive deficits to impact functioning" and noted that Wonsang "does not appear to have cognitive deficits sufficient to preclude her from working."  AR202.  Confusingly, however, Wonsang has *never* cited ADHD as the basis for her disability claim, and Dr. Meissler did not opine on any of Wonsang's claimed physical impairments which *do* form the basis for her disability claim.   AR295-97 (noting that Wonsang was forced to stop working because of worsening symptoms of "arthralgia, back pain, neck pain from cervical herniated discs, fibromyalgia, chronic fatigue, Epstein Barre virus, IBS, and dizzying, nausea-inducing migraines"); AR195-96 (noting that Wonsang was totally disabled because she "remains precluded from engaging in any sustained activity on a frequent and consistent basis ongoing due to dizziness, blurred vision, mental fogginess, poor mental stamina, fatigue, headaches, and neck pain following motor vehicular accident" )

Further, to the extent that Wonsang's hobbies of reading and writing matter at all regarding Wonsang's physical impairments, it is not as determinative as Reliance suggests.  *Smith*, 778 F. App'x at 211.  In *Smith*, Reliance similarly relied on a claimant's hobby to argue that the claimant was not totally disabled under the insurance policy.  *Id.*  The Fourth Circuit did not find this to be compelling evidence, however, as all references to the claimant's hobby occurred when all parties agreed that he was totally disabled.  *Id.*  Similarly, here, evidence that Wonsang engaged in reading and writing, was present during a time where all parties considered Wonsang to be "totally

disabled" under the Any Occupation standard as evidenced by her continued receipt of benefits. *See* AR328 (documentation of claim review noting that in 2019 a special investigation unit found Wonsang had an Upwork profile and that she listed herself as a Creative Blogger and Skilled Proofread on LinkedIn); AR2702 (Wonsang's ADL form from 2020 explaining that she engages in reading and writing less frequently because of "my chronic headaches and damaged muscles in my eyes, I can only read for short periods of time. And now arthritis in my hands and fingers make it hard to write without cramping. I do write on a blog online when I can look at the screen long enough.").[11]  That Wonsang can occasionally read and write is not inconsistent with Plaintiff's physical impairments or Reliance's vocational evaluation, neither of which Reliance has ever challenged.  Thus, this Court finds Reliance's focus on Wonsang's hobbies here unavailing.

In an attempt to bolster its denial decision, Reliance also argues that in addition to Wonsang's apparent reading and writing, notes within Wonsang's medical records show that Wonsang's conditions have improved such that she is no longer "totally disabled."  Dkt. 19 at 17-22.  A plan administrator has a fiduciary duty, however, to act with an "eye single" to the employee's interests, and "cannot cherry-pick the best evidence in an employee's file to support its desired conclusion."  *Ramirez v. Liberty Life Assurance Co. of Bos.*, No. 3:18-CV-00012-RJC, 2019 WL 469930, at *10 (W.D.N.C. Feb. 6, 2019).  Here, it appears that Reliance emphasized isolated evidence to buttress its conclusions, while ignoring contradicting evidence.  For example, Reliance highlights that Ms. Grogan, Wonsang's physical therapist, noted after an appointment that Plaintiff was limited but that "pt felt much better and less pain after session."  AR3941. Reliance also points out that Ms. Grogan went on to say that "[a]fter session pt had objectively improved tissue tension and mobility as well and improve JOT reflexive testing of cervical and

---

[11] Wonsang continued to receive benefits under the Any Occupation period until 2022.

thoracic spinal segments.  Pt was less in pain and had less ttp to palpation with passive accessory motions post tx."  AR3942.  Less pain does not mean that Wonsang's pain resolved nor do these statements confirm that such relief was permanent rather than temporary.  Reliance emphasizes notes from Wonsang's cardiology appointment with Mr. Kiemel noting the "overwhelmingly normal findings," but it does not appear that Mr. Kiemel made any findings regarding Wonsang's neck pain, spine pain, or migraines.  Further Reliance seems to discount, without justification, the symptoms that Mr. Kiemel noted in Wonsang's file that she had "night sweats . . . palpitations (2-3x week) . . . neck pain and back pain; Symptoms related to Ehlers-Danlos syndrome . . . . headaches (Occur every day) and migraines (2-3x a week.  Primarily occur in the evenings. . . sleep disturbances (Wakes every couple of hours.). . . fatigue."  AR3962.  Additionally, Reliance highlights Wonsang's September 21, 2021 treatment with Dr. Hinnant (another primary care physician), where Dr. Hinnant noted that her "physical examination includ[ing] but not limited to musculoskeletal was normal."  AR524.  Reliance also states that notes from the visit with Dr. Hinnant show that Wonsang "had full range of motion and there was no mention of joint hyper flexibility, cognitive issues or lethargy documented at the time of your visit."  *Id.*  But, Dr. Hinnant also wrote in those notes that Wonsang was experiencing "Positive for malaise/fatigue," "Positive for joint pain," and "Positive for cognitive dysfunction," AR3655, which was not mentioned in the nurse's review or Reliance's the denial letter.  *Id.*  Also not mentioned in denial letter are the numerous doctors' appointments, medical provider notes, and the vocational examination detailing Wonsang's prolonged medical problems and inability to work.

While Reliance further contends that its denial was appropriate because it was not required to accept a patient's subjective complaints as a doctor might, Dkt. 9 at 17-18, the Fourth Circuit has made clear numerous times that an administrator cannot disregard an insured's subjective

symptoms.  *Donovan v. Eaton Corp., Long Term Disability Plan*, 462 F.3d 321, 327 (4th Cir. 2006); *see also Weisman v. Guardian Life Ins. Co. of Am.*, No. 7:22-CV-00595, 2024 WL 65427, at *10 (W.D. Va. Jan. 5, 2024) (recognizing that an insured's subjective symptoms cannot be ignored).  Even still, the Administrative Record corroborates Wonsang's subjective complaints. First, Dr. Patel, a neurosurgeon, interpreted Wonsang's MRIs and found "craniovertebral instability, cervical instability, and cervical myelopathy."  AR3900.  Dr. Patel's Physician's Assistant opined that Wonsang is "significant[ly] debilitated due to her many symptoms, she is bedbound for much of the day.  Wearing a collar while upright allows some improved function, but not resolution.  She is unable to lead an active life in terms of physical activity." AR3896. Dr. Balint, a pain management specialist, examined Wonsang's cervical spine and opined that it was "grossly limited and with pain."  AR3913.  Dr. Bicksel opined that, "if her multidisciplinary team of medical providers could solve her severe musculoskeletal problems, her headaches and migraines might be less severe."  AR3307.  Wonsang's intense medication regimen, while not dispositive, is also corroborative of her pain.  *Wasson v. Media Gen., Inc.*, 446 F. Supp. 2d 579, 595 (E.D. Va. 2006); *See also Shupe v. Hartford Life & Accident Ins. Co.*, 19 F.4th 697, 710 (4th Cir. 2021) (accounting for medications as evidence of claimant's debilitating pain).  Therefore, Reliance erred in discounting Wonsang's subjective symptoms.

Ultimately, Reliance's failure to reconcile the conflicts of its reviewing nurses' reviews of Wonsang's file and Wonsang's treating physicians is a failure that satisfies even the less-stringent abuse-of-discretion standard.  Reliance cannot seek shelter in opaque medical statements in the face of considerable medical evidence to the contrary.  *See Smith*, 778 F. App'x at 211; *Mills v. Union Sec. Ins. Co.*, 82 F. Supp. 2d 587, 598 (E.D.N.C. 2011) (finding that an insurer could not rely on opaque statements from medical records where all of the claimant's doctors concluded that

he was unable to work).  Accordingly, based on the medical evidence, the vocational expert's determination that there was not *any* occupation for which someone in Wonsang's position could perform, and the Plan's language that "totally disabled" includes an individual that can only "perform[ ] the material duties on a part-time basis," the administrative record establishes that Plaintiff qualified as totally disabled.[12]  AR10.

*      *      *

Thus, the Court will grant Wonsang's motion for summary judgment as it pertains to the Wonsang's total disability under the Plan and deny Reliance's motion on the same.

D.  Relief

The remaining issue is what remedy is appropriate.  Wonsang asks the Court to award "her past-due benefits [Reliance] owe[d] from the day it terminated her claim to the present, and restoring her to on-claim status, subject to the terms of the policy" as well as attorney's fees and costs.  Dkt. 17 at 29.   Reliance, for the first time, now asserts that the Plan's Self-Reported Conditions Limitation ("Limitation") serves as a basis for the denial of Wonsang's benefits and, states that it "inadvertently failed to include this Limitation as a basis for the claim denial in it its decision letters."  Dkt. 21 at 8-10.  Thus, Reliance argues that, if the Court finds that Wonsang's claim survives *de novo* review, the case should be remanded to Reliance for full and fair review of the newly asserted Limitation.  Dkt. Nos. 9 at 21-24; 19 at 24-25.

---

[12] Reliance argues that, even if Wonsang is considered totally disabled under the Plan, the Self-Reported Conditions Limitation exception in the Plan acts as a bar to benefits.  "In ERISA cases, the insured bears the initial burden of establishing that the claim falls within the scope of coverage while the insurer has the burden of proving that an exclusion applies."  *Ferguson v. United of Omaha Life Ins. Co.*, 3 F. Supp. 3d 474, 481 (D. Md. 2014) (citing *Jenkins v. Montgomery Indus.*, 77 F.3d 740, 743 (4th Cir. 1996)).  As the Court has already found that Wonsang has met her initial burden of establishing that her claim falls under the coverage of the Plan, and Reliance failed to raise the purported Limitation in its denial letters, the Court will only address the Limitation with regards to the appropriate remedy.

It is left to the Court's discretion whether to remand or to award benefits. *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 363 (4th Cir. 2008). In many instances, remand is the appropriate remedy, particularly in the face of a procedural violation or where the trustee has simply lacked evidence. *Garner v. Cent. States, Se. & Sw. Areas Health & Welfare Fund Active Plan*, 31 F.4th 854, 860 (4th Cir. 2022). But, remand is not required in all cases, "particularly where evidence shows that the administrator abused its discretion," *Garner*, 31 F.4th at 860 (citing *Helton,* 709 F.3d at 360), or that the fiduciary has committed clear error or acted in bad faith, *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 n.6 (4th Cir. 1995) (quoting *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 n.3 (4th Cir. 1985)). In those circumstances it is within the discretion of the Court whether to remand to the claim administrator or grant benefits outright. *Garner*, 31 F.4th at 860. For example, in *Garner*, the Fourth Circuit affirmed the district court's award of benefits outright where the evidence showed that the claimant was entitled to benefits and the administrator had previously fumbled its review of the claim. *Id.* The Fourth Circuit noted that "[i]t would neither encourage the careful and efficient resolution of benefits claims, nor would it be fair to [the claimant]" to allow the insurer to have another bite at the apple. *Id.* at 859.

Here, Reliance has failed to comply with ERISA not only by failing to issue an appeals decision within the appropriate timeline, but also by seeking to prevail on a basis raised for the first time on judicial review. In both the initial and final denial decision, Reliance admits that it "inadvertently" failed to include the Limitation as a basis for the benefits denial decision, which is not indicative of the principled, reasoned decision-making process that is contemplated under ERISA, such that Reliance should have another "bite at the apple." *Garner*, 31 F.4th at 860. The Court passes no judgment on Reliance's intent. But, this is not a case of simply "inadequate evidence," as Plaintiff provided ample evidence to Reliance in the form of physician's opinions of

her conditions. [13]  Reliance relied instead on its own nurse's evaluation of Wonsang's medical records that was flatly inconsistent with that of her treating physicians and Reliance's own vocational expert.  Reliance did not reconcile any of Wonsang's conflicting medical opinions in its denial decision, and an insurer must "make more of an effort to get to the truth of the matter." *Skinder v. Fed. Exp. Long Term Disability Plan*, No. 5:19-cv-153-KDB/DCK, 2021 WL 1377982, at *10 (W.D.N.C. Apr. 12, 2021) (internal quotation marks and citation omitted).  Thus, as Reliance seems to have discounted Wonsang's treating physician's conclusions, without justification, remand "would neither encourage the careful and efficient resolution of benefits claims, nor would it be fair to [the claimant], to permit" yet another review of the claim. *Rupprecht*, 623 F. Supp. 3d at 696 (quoting *Garner*, 31 F.4th at 859).  Reliance had a fiduciary duty to consider Wonsang's claims fully and fairly and to provide her with specific reasons for denial.  *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 158 (4th Cir. 1993).  Here, Reliance has failed to live up to its fiduciary duty as mandated under ERISA.  Further, the Court does not find Reliance's failure to timely issue an appeals decision or its failure to include the Limitation[14] prior to this litigation to be "procedural."  *Rupprecht*, 623 F. Supp. 3d at 696 n.19 (holding that an insurer's failure to issue an appeals decision was not "procedural").  Therefore,

---

[13] There is no evidence that Wonsang's treating physicians believed that her condition had improved such that she could return to work in 2022.  For example, in March of 2022, Wonsang's physical therapist explained that Wonsang is "limited with prolonged standing, sitting, walking, sleeping, and all [activities of daily living] that require her to move greater than 10 to 15 min." AR3946.  On June 23, 2022, Wonsang's primary care physician noted that Wonsang is "completely and totally disabled from work due to medical condition and required medication," AR3916-17, and on August 11, 2022, Wonsang's neurologist stated that Wonsang is "significant[ly] debilitated."  AR3896.

[14] As Plaintiff has provided evidence in the form of MRIs to support her claims, it does not appear to the Court that the newly asserted Limitation would even apply to Wonsang under these circumstances.  *See* AR3900 (noting that Wonsang's MRIs showed "craniovertebral instability, cervical instability, and cervical myelopathy.")

without deciding the specific amount due, the appropriate remedy is to award benefits to Wonsang from May 26, 2022 to present day without precluding Reliance from terminating Plaintiff's benefits in the future based on adequate justification.  *Id.* at 696 (awarding approximately 26 months of back benefits).

### E.  Attorney's Fees and Costs

Wonsang also moves for an award of attorney's fees and costs.  ERISA provides that "a district court may, in its discretion, award costs and reasonable attorney's fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party achieved some degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010).  However, none of these issues have been fully briefed by the parties.  The Court will deny without prejudice the request for attorney's fees.  Wonsang is directed to file any renewed motion within thirty (30) days of this Order.

### IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Wonsang's Motion for Summary Judgment (Dkt. 16) is GRANTED; and it is

FURTHER ORDERED that Reliance's Motion for Summary Judgment (Dkt. 8) is DENIED; and it is

FURTHER ORDERED that Reliance award Plaintiff benefits in accordance with the Plan from May 26, 2022 through the present and restore her to on-claim status, subject to the terms and conditions of the Long Term Disability policy; and it is

FURTHER ORDERED that Wonsang's request for attorney's fees and costs is DENIED WITHOUT PREJUDICE to renewal; and it is

FURTHER ORDERED that Wonsang shall submit any renewed motion for attorney's fees and costs within 30 days of the date of this Order.

It is SO ORDERED.

Alexandria, Virginia
April 10, 2024

/s/

Rossie D. Alston, Jr.
United States District Judge